UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

STACEY HARRISON, et al.,

     Plaintiffs,

v.

AZTEC WELL SERVICING CO., et al.,

     Defendants.

No. 1:20-CV-038-H

## ORDER AND MEMORANDUM OPINION

Several motions are pending before the Court. First, Harrison seeks leave to amend his second amended complaint (Dkt. No. 35), and the defendants move to strike Harrison's third amended complaint (Dkt. No. 42). The Court grants Harrison's motion for leave to amend and, therefore, denies the defendants' motion to strike as moot. Two dispositive motions are also pending—the defendants' motion to dismiss for failure to state a claim (Dkt. No. 30) and Jason Sandel's motion to dismiss for lack of personal jurisdiction (Dkt. No. 32). The motion to dismiss for failure to state a claim is granted in part and denied in part. The Court orders further briefing on the motion to dismiss for lack of personal jurisdiction.

**1.    Stacey Harrison's third amended complaint is legally operative.**

Numerous amended complaints have been filed in this matter, and there is a controversy among the parties about which one is operative. After considering the issue, the Court concludes that the Third Amended Complaint (TAC) is operative here.

## A.    Procedural History

The initial complaint was filed on February 21, 2020, and the plaintiffs amended it twice before serving it on the defendants. Dkt. Nos. 1, 4, 8. The First Amended Complaint was filed without leave for "clerical reasons," and the Second Amended Complaint (SAC) corrected jurisdictional defects in the pleading, as identified in the Court's February 25, 2020 order. Dkt. Nos. 7, 8. All defendants were served with the SAC on March 10, 2020. Dkt. Nos. 11–16. The SAC's plaintiffs were Stacey Harrison and Harrison Lease Acquisition & Development Corp. (Harrison Lease A&D). Dkt. No. 8. Aztec Well Servicing Co., Triple S Trucking, Inc., Totah Rental & Equipment Co., Double M Mud Co., Basin Disposal Inc., Roadrunner Fuels, Inc., Jason Sandel, and Jerry Sandel were the defendants. *Id.*

Motions to dismiss under Rules 12(b)(2) and 12(b)(6) were filed by the defendants on April 14, 2020. Dkt. Nos. 30, 32. No substantive briefs were submitted in response. *See* Dkt. Nos. 37–38. Instead, without first requesting leave of court, Harrison filed a Third Amended Complaint (TAC) containing new allegations. Dkt. No. 36. The TAC removed two parties from the lawsuit—plaintiff Harrison Lease A&D and defendant Jerry Sandel. Harrison believes that the TAC was properly filed and that it moots the pending motions.[1] Dkt. No. 37 at ¶ 7; Dkt. No. 38 at ¶ 7. Additionally, Harrison filed a motion for leave to amend his complaint should the Court find that the TAC was improperly filed. Dkt. No. 35. The defendants filed a motion to strike the TAC as improperly filed and opposed Harrison's motion for leave. Dkt. Nos. 42, 46.

---

[1] Alternatively, Harrison requests the opportunity to respond to the motions to dismiss if the Court concludes that the TAC does not moot the motions to dismiss. Dkt. No. 37 at ¶ 11. Because Harrison had the opportunity to respond to the motions to dismiss, the Court denies this request.

**B.     The TAC was improperly filed.**

"A party may amend its pleading *once* as a matter of course within (A) 21 days *after serving it*; or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days *after service of a motion* under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1) (emphasis added). While the TAC was the second time the complaint had been amended without leave of court, Harrison points out that it was the first amendment after the defendants had been served. Dkt. No. 51 at ¶ 11. According to Harrison's interpretation of Rule 15(a), amendments made before service do not count because the Rule only applies after a complaint has been served. *Id.* Since the TAC was the first amendment following service, Harrison argues that he could properly file it without leave of court. *Id.*

Harrison's reading of Rule 15, while creative, is not the most compelling. Rule 15(a)'s plain language provides that a party may amend a pleading once without leave of court. The provisions that follow set forth the deadlines for amendment. Thus, a party may amend a pleading once without leave of court "21 days after serving it" or "21 days after service of a motion under Rule 12(b)." Fed. R. Civ. P. 15(a)(1)(A)–(B). These deadlines do not, as Harrison contends, imply that Rule 15 is only applicable after service of a pleading or a motion. The 21-day exception is the only exception to the Rule requiring leave, implying by negative implication that Harrison's proposed additional exception for unlimited amendments before service does not exist. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107–11 (Thompson/West 2012) (explaining that "[t]he expression of one thing implies the exclusion of others"). Moreover, the Rule does not contain conditional language indicating that it is triggered only after

service, nor is there language in the Rule suggesting such a limitation. Lastly, Harrison's interpretation would allow plaintiffs to amend their complaint as many times as they wanted before service, thus cluttering the Court's docket and potentially confusing newly served defendants.

A natural reading of Rule 15, in contrast, gives rise to a simple procedure for amending pleadings. *See* Scalia, *supra* at 167 ("The text must be construed as a whole.") Once a party has amended its pleading as a matter of course, it must then obtain the opposing party's written consent or the court's leave to amend again regardless of whether the opposing party has been served with the pleading. *See* Fed. R. Civ. P. 15(a)(2). Harrison took advantage of this one-time opportunity when he filed his First Amended Complaint on February 24, 2020. *See* Dkt. No. 4. He was therefore required to secure the written consent of the defendants or leave of court before making further amendments.

In an analogous case, the First Circuit held that a plaintiff can amend a complaint only once as a matter of course under Rule 15(a). *U.S. ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 193 (1st Cir. 2015). The *D'Agostino* plaintiff filed a qui tam lawsuit under the False Claims Act, which was filed under seal while the United States investigated the claim. *Id.* at 190. While the complaint was sealed, the plaintiff amended his complaint once as a matter of course and then filed second and third amended complaints with the court's leave. *Id.* Once the complaint was unsealed, the plaintiff served the defendants, and the defendants filed motions to dismiss. *Id.* at 190–91. The plaintiff then filed his fourth amended complaint without requesting leave. *Id.* at 191. The First Circuit concluded that the fourth amended complaint had been improperly filed and that the plaintiff had

exhausted his one-time right to amend as a matter of course when he filed his first amended complaint before serving the defendants. *Id.* at 193.

Similarly, Harrison's TAC was improperly filed even though his previous amendments preceded service. Absent the defendants' consent—which was not obtained—Harrison was required to request leave of court before filing another amendment. His TAC was, therefore, filed prematurely.

### C.   Nevertheless, the Court grants Harrison's motion for leave to amend his SAC, thus making the TAC legally operative.

While Harrison believed that the filing of his TAC was proper, he concurrently moved for leave to amend his complaint. Courts are to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In the absence of undue delay, bad faith, or dilatory motive on the part of the movant, leave should be freely given. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, Harrison has not repeatedly failed to cure deficiencies in previous amendments. Nor would allowing the amendment unduly prejudice the defendants at this early stage. Accordingly, the Court grants Harrison's motion for leave to amend. The Clerk of Court is directed to terminate Harrison's TAC filed on May 5, 2020 and refile the TAC attached in Harrison's motion for leave (Dkt. No. 35-1).

### D.   The Court will not moot the pending motions to dismiss in light of the TAC.

Even though the Court has accepted Harrison's TAC, the Court declines to moot the pending motions to dismiss. "A motion to dismiss that attacks the original complaint for deficiencies that persist in the amended complaint should not necessarily always be denied as moot. Rather, the court has the discretion to apply the original motion to dismiss to the amended complaint." *New World Int'l, Inc. v. Ford Global Techs., LLC*, 2017 WL 1078525, at

*5 (N.D. Tex. Mar. 22, 2017); *see also* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6 Fed. Prac. & Proc. Civ. § 1476 (3d ed. 2020).  Because the motions raise arguments that remain germane to the TAC, the Court declines to moot the pending motions to dismiss.

## 2.    Factual Background[2]

Plaintiff Stacey Harrison owns Harrison Lease Acquisition and Development (Harrison Lease A&D), which takes operating and non-operating interests in oil and gas leases.  Dkt. No. 35-1 at ¶ 12.  Harrison consulted for an unnamed company ("the Company") that had previously used Aztec Well Servicing Co. to drill oil wells in West Texas and New Mexico and owned a non-operating working interest in the Company's leases.  *Id.* at ¶ 13.  The Company elected not to renew its contract with Aztec Well, and Harrison alleges that the Aztec Well Family[3] responded by embarking on a smear campaign against Harrison and Harrison Lease A&D.  *Id.*  This smear campaign involved a series of phone calls to Harrison's contractors and two "INFORMATION WANTED" advertisements printed in Texas newspapers.

### A.    Phone Calls to Harrison's Contractors

Harrison alleges that Jason Sandel, a shareholder and Executive Vice President at Aztec Well Servicing Co., made damaging calls to various organizations that provided services to the Company.  *Id.* at ¶¶ 23–32.  These organizations include Norton Energy Drilling, LLC, Black Gold Industries, RFC Drilling, LLC, Pason Systems, Inc., and Graco,

---

[2] These factual allegations stem from the TAC, which the Court must accept as true at the motion-to-dismiss stage.  *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

[3] This term refers to Aztec Well Serving Co., Triple S. Trucking, Inc., Totah Rental & Equipment Co., Double M Mud Co., Basin Disposal, Inc., Roadrunner Fuels Inc., and Jason Sandel.  *See* Dkt. No. 35-1 at 1 n.1.

Inc. *Id.* In each of these phone calls, Sandel represented that Harrison and the Company were not paying servicers for work performed. *Id.* As a result, these organizations began to withhold services from the Company, and Harrison and the Company became plagued by oil rig shutdowns and chronic delays. *Id.* at ¶¶ 23–32, 44. These delays allegedly caused Harrison and the Company to suffer pecuniary losses of at least $25 million. *Id.* at ¶ 45.

### B.   "INFORMATION WANTED" Newspaper Advertisements

The Aztec Well Family is also alleged to have placed information-wanted advertisements in the Midland Reporter Telegram and the Abilene Reporter-News. *Id.* at ¶ 33; *see also* Dkt. No. 31 at 5 (images of the advertisements). These advertisements contain photos of Stacey Harrison and another man below an "INFORMATION WANTED" heading. Dkt. No. 31 at 5. The advertisement states that the Aztec Well Family has been attempting to serve these men "in an effort to collect millions in outstanding debt" but that they are "nowhere to be found." *Id.* It extolls readers to call a phone number with any information on their whereabouts. *Id.* The advertisement also includes a post office box for the Aztec Well Family. *Id.*

After these advertisements were posted, Harrison experienced significant business-related repercussions. For example, Jade Services, Inc. shut down operations, blockaded Harrison's well, and demanded immediate payment for work they had already completed. Dkt. No. 35-1 at ¶ 40. Similarly, an individual employed with Yellowjacket Oilfield Services texted Harrison and stated that the company had reservations about continuing to do business with him. *Id.* at ¶ 41. The Yellowjacket employee relayed that Yellowjacket had received a copy of the advertisement from an Aztec Well employee. *Id.*

Finally, concerns stoked by the advertisements allegedly scuttled a deal worth $7 million. *Id.* at ¶ 44. According to Harrison, the deal was intended to provide capital to expand drilling operations and to purchase Harrison's interest in at least one rig. *Id.* Harrison's counterparty to the $7 million deal allegedly expressed concern about continuing to do business with Harrison based on the information-wanted advertisements. *Id.*

Harrison sued the Aztec Wells Family for libel, slander, tortious interference with existing contract, business disparagement, and intentional infliction of emotional distress. *Id.* at ¶¶ 47–86. He also seeks a retraction of the information-wanted posters under Texas Civil Practice and Remedies Code §§ 73.051–73.055. *Id.* at ¶ 87. Two motions to dismiss under Rules 12(b)(2) and 12(b)(6) are now pending before the Court.

**3.    Motion to Dismiss for Failure to State a Claim**

**A.    Legal Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Therefore, a complaint must allege sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendants can challenge the sufficiency of a complaint through a motion to dismiss under Rule 12(b)(6).

In evaluating a 12(b)(6) motion, the court must accept all well-pleaded facts as true. *Iqbal*, 556 U.S. at 678. However, this tenet does not extend to legal conclusions.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A federal court sitting in diversity applies state substantive law. *See Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996). Applying Texas's choice-of-law rules, Texas law should apply. Neither party disputes that Texas law governs this action.

### B.    Harrison has adequately pled a claim for libel.

To prevail on his defamation claims, Harrison must show (1) the publication of a false statement of fact to a third party; (2) that was defamatory to the plaintiff; (3) with the requisite degree of fault.[4] *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). A statement is defamatory if it "tends to injure a living person's reputation . . . or impeach[es] any person's honesty, integrity, virtue, or reputation." Tex. Civ. Prac. & Rem. Code § 73.001; *see also Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 637–38 (Tex. 2018). Defamation per se occurs when statements are so obviously harmful that general damages are presumed, such as when a statement injures a person in his business, profession, or occupation. *Lipsky*, 460 S.W.3d at 593; *see also Hoskins v. Fuchs*, 517 S.W.3d 834, 843 (Tex. App.—Fort Worth 2016, pet. denied), *cert. denied* 139 S. Ct. 489 (2018). Libel involves defamatory statements that are written. Tex. Civ. Prac. & Rem. Code § 73.001.

Harrison alleges that Sandel, acting on behalf of the Aztec Well Family, published two advertisements in the Midland Reporter Telegram and the Abilene Reporter-News. Dkt. No. 35-1 at ¶ 33. The advertisements state that "[The Aztec Well Family has] attempted to serve [Harrison] in an effort to collect millions in outstanding debt" and that he

---

[4] A private individual need only prove negligence, whereas a public figure must prove actual malice. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015).

is "nowhere to be found." *Id.* at ¶¶ 35–37; *see also* Dkt. No. 31 at 5.  The complaint further alleges that the assertions in the advertisements were "demonstrably false, defamatory in nature, and were published without regard for the truth." Dkt. No. 35-1 at ¶ 38.  The Court concludes that Harrison has pled a plausible claim for libel.

The Aztec Well Family argues that it cannot be held liable for the advertisement based on Texas's litigation privilege.  Texas's litigation privilege provides that "any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the basis of a civil action in damages for slander or libel." *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 111 (1942).  It extends to statements made by parties and counsel and attaches to all aspects of the proceeding. *James v. Brown*, 637 S.W.2d 914, 916–17 (Tex. 1982).  Courts have cautioned against enlarging the privilege into a license to "go about in the community and make false and slanderous charges against [a] court adversary." *BancPass, Inc. v. Highway Toll Admin., LLC*, 863 F.3d 391, 402 (5th Cir. 2017) (quoting *De Mankowski v. Ship Channel Dev. Co.*, 300 S.W. 118, 122 (Tex. App.—Galveston 1927, no writ)).  Therefore, the defamatory statement must have "some relation to the proceeding" for the privilege to apply. Restatement (Second) of Torts § 587 (1977); *see also Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654–55 (Tex. 2015) (adopting the Restatement's formulation of the privilege).  In determining whether the litigation privilege applies to a communication, the entire communication must be considered in its context. *Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 28 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

Texas courts have applied this privilege broadly. *BancPass*, 863 F.3d at 402.  For instance, it has been applied to demand letters written by lawyers, *see Crain v. Smith*, 22

S.W.3d 58, 62–63 (Tex. App.—Corpus Christi 2000, no pet.), to the delivery of pleadings in

pending litigation to the media, *see Hill v. Herald Post Publ'g Co., Inc.*, 877 S.W.2d 774, 782–

84 (Tex. App.—El Paso 1994), *rev'd in part on other grounds*, 891 S.W.2d 638 (Tex. 1994),

and to statements to the media about potential lawsuits. *See Daystar Residential*, 176 S.W.3d

at 28–29; *Landry's, Inc. & Houston Aquarium, Inc. v. Animal Legal Def. Fund*, 566 S.W.3d 41,

60 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). However, the Fifth Circuit

declined to extend the privilege where the defamatory communication was unrelated to a

later legal action and where the communication's recipients were not related to the lawsuit.

*BancPass*, 863 F.3d at 404–05.

Here, Aztec Well Servicing was the plaintiff in a mineral-lien foreclosure action filed

in the 106th Judicial District Court of Gaines County, Texas that implicated an interest held

by Harrison Lease A&D. *See* Dkt. No. 31 at 6–21 (providing the original petition from that

action). To claim a mineral lien, the claimant must file an affidavit with the appropriate

county clerk that contains the name of the mineral property owner and a description of the

interest involved with the lien. Tex. Prop. Code §§ 56.021(a), 56.022(a). As the defendants'

brief points out, mineral subcontractors must also "serve on the property owner written

notice that the lien is claimed." *Id.* at § 56.021(b)(2); *see also* Dkt. No. 30 at 7. Written

notice must be served at least ten days before the affidavit is filed with the county clerk. *Id.*

Mineral contractors, by contrast, need not provide notice of a claim before securing a lien.

*See In re Heritage Consol., LLC*, 765 F.3d 507, 512 (5th Cir. 2014); *see also Bandera Drilling Co.,*

*Inc. v. Lavino*, 824 S.W.2d 782, 783 (Tex. App.—Eastland 1992, no writ). While the Texas

Property Code's chapter concerning mineral liens does not specify the means by which a

property owner can be served with notice of a claim, the analogous provision of the Code

addressing mechanic's liens states that written notice may be provided by "send[ing] a copy of the [lien] affidavit by registered or certified mail to the owner . . . at the owner's last known business or residence address." Tex. Prop. Code § 53.055(a). The Aztec Well Family appears to argue that the advertisements were related to the Gaines County litigation based on the Texas Property Code's "subcontractor-notice" requirement. Dkt. No. 30 at 7; *see also* Dkt. No. 46 at 5–6.

Assuming that the Aztec Well Family was a mineral subcontractor with a duty to provide written notice before securing its lien, it is unclear why its members would wait until November 10, 2019 to provide Harrison Lease A&D with written notice *after* naming Harrison Lease A&D in a lien foreclosure action filed on November 4, 2019. *See* 56 Tex. Jur. 3d Oil & Gas § 669 (2020) ("If the required notice is not given . . . the lien does not attach."). It is equally unclear why it would be necessary to serve written notice on Harrison Lease A&D by publicly naming Harrison personally and asserting that he was "nowhere to be found," when the original petition represents that "Service on [Harrison Lease A&D] may be had by serving its Registered Agent . . . at its registered office, 5125 Crystal Creek, Abilene, Taylor County, Texas 79606." Dkt. No. 31 at 8. The Court's confusion is only exacerbated by the fact that the advertisement does not mention Harrison Lease A&D, the defendant in the foreclosure action, at all. While Texas's litigation privilege has been applied broadly, there must still be "some relation to the proceeding" for the privilege to apply. *See* Restatement (Second) of Torts § 587. The Court is unable to discern at this point what legal rights the Aztec Well Family was trying to secure through the advertisement or how the advertisement relates to the lien-foreclosure action.

Accordingly, it concludes that the litigation privilege does not apply to the advertisements placed in the Midland Reporter Telegram and the Abilene Reporter-News.

Harrison has adequately pled his libel claim, especially when the Court accepts all well-pleaded facts as true, as it must in this procedural posture. Accordingly, the defendants' motion to dismiss is denied to the extent that it seeks to dismiss Harrison's libel claim.

### C.   Harrison has adequately pled a claim for slander.

Slander is verbal defamation. *Dallas Morning News*, 554 S.W.3d at 623. Therefore, to succeed on his slander claim, Harrison must show (1) a defamatory statement (2) that is orally communicated or published to a third party (3) without legal excuse. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). Harrison pleads that the Aztec Well Family, through Sandel, called multiple organizations that provided services to Harrison and the Company. Dkt. No. 35-1 at ¶¶ 23–32. The complaint alleges that Sandel falsely and knowingly represented that Harrison and the Company had not been paying servicers for their work. *Id.* Harrison and the Company were injured as a result of these calls. *Id.*

The defendants raise two arguments for dismissing Harrison's slander claim, both of which are remedied by the TAC. First, they argue that Sandel's alleged statements were opinions and, therefore, not actionable as defamation. *See* Dkt. No. 30 at 10; *see also* Dkt. No. 46 at 7. However, the TAC now alleges statements of verifiable fact. *See, e.g.*, Dkt. No. 35-1 at ¶ 23 ("Sandal [sic] represented to Jay Norton that [Harrison] and the Company were not paying servicers for work performed."). Second, they argue that Sandel's alleged statements did not concern Harrison. *See* Dkt. No. 30 at 10–11; *see also* Dkt. No. 46 at 8–9.

But the TAC alleges that Sandel's defamatory statements concerned Harrison. *See* Dkt. No. 35-1 at ¶ 23. The Court finds that the TAC addresses the arguments raised in the defendants' motion to dismiss and concludes that the allegations from the TAC, taken as true, plausibly allege a slander claim against the defendants.

### D.    Harrison's tortious interference with existing contract claim is dismissed.

Tortious interference with an existing contract requires that the plaintiff show (1) the existence of a contract subject to interference; (2) a willful or intentional act of interference; and (3) proximate cause of actual damage. *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995). "To establish a willful and intentional act of interference, there must be evidence that the defendant was more than a willing participant—the defendant must have knowingly induced one of the contracting parties to breach its obligations under a contract." *Ferrara v. Nutt*, 555 S.W.3d 227, 243 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (quoting *Greenville Automatic Gas Co. v. Automatic Propane Gas & Supply, LLC*, 465 S.W.3d 778, 786–87 (Tex. App.—Dallas 2015, no pet.)).

The TAC is cryptic on this claim. It alleges in full:

> 68. Harrison has and/or had valid, binding contracts with a third party that Defendants either had actual knowledge of the contract or enough facts and knowledge regarding the circumstances to have belief there was a contract in which Harrison had in interest. Plaintiff, as part of this agreement[,] was set to be a party to a financing and purchasing agreement related to wells and assets that Plaintiff owed [sic] in part or in whole.

> 69. The Defendants willfully and intentionally interfered with the contract by promulgating intentionally false information regarding Harrison's financial viability to third parties doing business with Harrison. As a result of these actions by the Aztec Well Family, these third parties ended contract negotiations and or terminated contractual obligations.

> 70. Harrison was damaged as a direct and proximate result of the Defendants' tortious interference with Harrisons' [sic] existing contracts.

14

71. Harrison is entitled to general, actual, and special damages as a result of the tortious conduct of the Defendants.

Dkt. No. 35-1 at ¶¶ 68–71. The complaint leaves undefined the "third party" referenced by Harrison. And it does not specify which binding contract was allegedly interfered with. It seems most likely that Harrison is referring to the $7 million deal that did not come to fruition because of concerns stemming from the Aztec Well Family's alleged "campaign of defamation." *See id.* at ¶ 44.

Paragraph 44 is the first and only time that the $7 million deal is mentioned in the TAC. It states that the deal was intended to provide capital to expand drilling operations and to purchase Harrison's interest in at least one oil rig. *Id.* The TAC further alleges that the other party to the deal grew anxious due to the Aztec Well Family's newspaper advertisements. *Id.* The complaint does not provide information on the other party to the deal, and nothing in the TAC explains how the Aztec Well Family would have known about the deal. Thus, Harrison has not pled factual allegations that would enable the Court to "plausibly infer" that the defendants willfully or intentionally interfered with an existing contract. Accordingly, his tortious interference claim is dismissed for failure to state a claim.

### E.    Harrison's business-disparagement claim is dismissed.

The elements of business disparagement are that the defendant (1) published false and disparaging information about the plaintiff; (2) with malice; (3) without privilege; and (4) caused special damages to the plaintiff. *Lipsky*, 460 S.W.3d at 592. "Special damages" is synonymous with "economic damages" and refers to economic losses such as loss of sales, trade, or other business dealings. *See Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 767 (Tex. 1987). "Proof of special damages is essential" to stating a claim for business

disparagement. *Id.* Indeed, the distinction between business disparagement and defamation turns on the different interests that each tort protects. Defamation protects the reputational interests of an injured party whereas business disparagement protects economic interests. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). Accordingly, Harrison must plead that he personally incurred special damages for his business-disparagement claim to survive the defendants' motion to dismiss.

Harrison and Harrison Lease A&D are separate legal entities since corporations are distinct from their shareholders. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets. *Id.* at 475. The TAC removed Harrison Lease A&D as a plaintiff, leaving only Harrison in his personal capacity. The TAC states:

> 21. Harrison is engaged in the oil and gas business through Harrison Lease A&D. Through Harrison A&D, Harrison acts as a consultant to other companies to assist them with acquiring investors and oil and gas leases; he also engages in assisting these companies in matters relating to drilling operations. This work forms the basis of the income Harrison generates to support his family.

Dkt. No. 35-1 at ¶ 21. Taking Harrison's pleading as true, it appears that Harrison Lease A&D, not Harrison personally, suffered economic damages.

As a shareholder of Harrison Lease A&D, Harrison may have been injured indirectly through the injury to Harrison Lease A&D. In a shareholder-derivative suit, Harrison could attempt to "step into the shoes" of Harrison Lease A&D and assert a business-disparagement claim on behalf of the corporation. 15 Tex. Jur. 3d Corporations § 235 (2020); *see also* Tex. Bus. Org. Code § 21.551 (defining a "derivative proceeding" as "a civil suit in the right of a domestic corporation").

If Harrison intended to pursue a shareholder-derivative action by not including

Harrison Lease A&D in his TAC, he has not satisfied the procedural requirements to do so.

Federal Rule of Civil Procedure 23.1 requires that the complaint in a derivative action:

> (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;
>
> (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and
>
> (3) state with particularity:
>
>> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
>>
>> (B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b).  The TAC does not fulfill the second or third requirements.

Harrison has not adequately pled that he personally suffered special damages as a

result of the Aztec Well Family's disparaging communications.  Moreover, he has not

satisfied Rule 23.1's requirements for shareholder-derivative suits.  Accordingly, Harrison's

business-disparagement claim is dismissed.

### F.   Harrison's claim for intentional infliction of emotional distress is dismissed, with prejudice, for failure to state a claim.

To establish an intentional infliction of emotional distress (IIED) claim, a plaintiff

must show that (1) the defendant acted intentionally or recklessly; (2) the defendant's

conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff

emotional distress; and (4) the emotional distress suffered by the plaintiff was severe.  *Wal-*

*Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003) (citation omitted).  IIED is a

gap-filler tort, created to permit recovery in "those rare instances in which a defendant

intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). Thus, if the "gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Id.* at 447.

Here, the gravamen of Harrison's complaint is defamation, and his IIED claim rests upon the same underlying facts as his defamation claim. Even assuming all of the plaintiff's allegations as true, the Court finds that Harrison's IIED claim is insufficient and that allowing the claim to be amended would be futile. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Accordingly, Harrison's IIED claim is dismissed with prejudice. *See Tubbs v. Nicol*, 675 F. App'x 437, 440 (5th Cir. 2017) (affirming a district court's grant of summary judgment to a defendant on an IIED claim because the gravamen of the plaintiff's complaint was defamation); *see also Howe v. Yellowbook, USA*, 840 F. Supp. 2d 970, 979–80 (N.D. Tex. 2011) (dismissing a plaintiff's IIED claim because it was preempted by her Title VII claim).

**4.      The Court denies, in part, Sandel's motion for lack of personal jurisdiction.**

### A.      Legal Standard

A defendant may move to dismiss a complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). In evaluating a motion under Rule 12(b)(2), the Court must accept uncontroverted allegations in the complaint as true and must resolve all factual conflicts in favor of the non-movant. *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). However, the Court can look beyond the plaintiff's complaint in determining whether a prima facie case for jurisdiction has been made. Indeed, the district court may consider the contents of the record at the time of the

motion. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citations omitted).

If no evidentiary hearing is held, Harrison must establish a prima facie case of personal jurisdiction. *Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 347 (5th Cir. 2019). By contrast, if an evidentiary hearing is held, Harrison must establish personal jurisdiction by a preponderance of the evidence. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 529 (5th Cir. 2014).

Here, Jason Sandel argues that the Court does not have personal jurisdiction over him. Federal courts may exercise jurisdiction if the state long-arm statute permits jurisdiction and the exercise of such jurisdiction would not violate due process. *Halliburton*, 921 F.3d at 539. Because Texas's long-arm statute extends to the limits of federal due process, only the two-step due process analysis is necessary. *Id.* Thus, to establish personal jurisdiction, Harrison must show that Sandel had "minimum contacts" with Texas and that the exercise of jurisdiction would not "offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Minimum contacts may be established through either general or specific jurisdiction. Specific jurisdiction exists when a defendant has purposefully directed his activities at residents of the forum and the litigation results from injuries that arise out of or relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). "A forum state's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). The Fifth Circuit has permitted the exercise of specific personal jurisdiction over a defamation claim where a nonresident defendant called

a forum resident and made false statements over the phone. *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332 (5th Cir. 1982); *see also Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 491 (5th Cir. 2018) (holding that a Texas court had personal jurisdiction over an active participant in a conference call who made fraudulent representations to a Texas plaintiff).

**B.    The Court denies Sandel's motion with respect to Harrison's libel claim.**

The Court finds that it can exercise personal jurisdiction over Sandel with respect to Harrison's libel claim. According to the TAC, Sandel published the information-wanted advertisements in Texas newspapers. This allegation leads the Court to conclude that Sandel purposefully directed actions toward Texas, thus creating specific jurisdiction. *See Burger King Corp.*, 471 U.S. at 472.

Sandel argues that exercising personal jurisdiction over him would violate traditional notions of fair play and substantial justice. Five factors are relevant to this analysis: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 114 (1987). After considering these factors, the Court concludes that it would be fair to require Sandel to defend in Texas. While Sandel might be slightly burdened as an out-of-state defendant from New Mexico, Harrison's interest in obtaining convenient and effective relief in Texas is great. Moreover, Texas has an interest in protecting individuals who conduct business within the state. Accordingly, *Asahi*'s factors weigh in favor of exercising personal jurisdiction over Sandel.

Sandel also argues that Texas's fiduciary-shield doctrine forecloses this Court from exercising personal jurisdiction over him. The fiduciary-shield doctrine prohibits the attribution of corporate acts to corporate officers for the purpose of establishing personal jurisdiction. *General Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 794 (5th Cir. 2007) (citing *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 437–38 (Tex. 1982)). The doctrine only applies to attempts to exercise general jurisdiction over a defendant. *Tabacinic v. Frazier*, 372 S.W.3d 658, 668 (Tex. App.—Dallas 2012, no pet.) (citing *Crithfield v. Boothe*, 343 S.W.3d 274, 287 (Tex. App.—Dallas 2011, no pet.)). Thus, the doctrine does not protect a corporate officer from specific personal jurisdiction as to intentional torts for which he may be held individually responsible. *Nw. Cattle Feeders, LLC v. O'Connell*, 554 S.W.3d 711, 725 (Tex. App.—Fort Worth 2018, pet. denied) (citing *Steamboat Capital Mgmt. v. Lowry*, 2017 WL 5623414, at *10 (Tex. App.—Dallas Feb. 17, 2017, no pet.)).

In *General Retail Services*, a corporate officer of a franchisor mailed fraudulent marketing materials to a Texas citizen who was interested in becoming a franchisee. 255 F. App'x at 779. In holding that the fiduciary-shield doctrine did not apply to the officer, the Fifth Circuit noted that "[w]hile the fiduciary-shield doctrine could prohibit this court from ascribing acts of [the franchisor] to [the officer], it does not prohibit [the officer] from being held personally liable for his own tortious conduct simply because he is an officer of a corporation." *Id.* at 794–95. Similarly, the fiduciary-shield doctrine does not protect Sandel from personal liability for his allegedly tortious conduct. Moreover, the doctrine does not apply here because the Court is exercising specific jurisdiction, not general jurisdiction, over Sandel. *See Tabacinic*, 372 S.W.3d at 668.

Because the TAC alleges facts creating personal jurisdiction over Sandel with respect to Harrison's libel claim, the Court denies, in part, Sandel's motion under Rule 12(b)(2).

### C.    The Court orders Harrison and Sandel to provide further briefing on whether Sandel's alleged phone calls were made to Texas.

Assuming that Sandel made defamatory calls to companies located in Texas, the Court tentatively concludes that it may exercise personal jurisdiction over Sandel with respect to Harrison's slander claim under *Brown* and *Trois*. However, Sandel accurately points out that the TAC does not allege whether these calls were made from Texas or were directed to Texas.[5] Dkt. No. 47 at 7. Thus, on the face of the TAC, it is not possible to discern where Sandel directed his phone calls. Accordingly, the Court orders Harrison and Sandel to provide further briefing to aid the Court in resolving Sandel's motion to dismiss for lack of personal jurisdiction. In these supplemental briefings, Harrison must establish personal jurisdiction by a preponderance of the evidence. *See Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d at 529.

### 5.    Conclusion

After considering the pending motions, the Court grants Harrison's motion to amend his second amended complaint and, thus, deems operative the TAC. Applying the pending motion to dismiss to the TAC, the Court dismisses Harrison's claims for tortious interference with an existing contract, business disparagement, and intentional infliction of emotional distress. Harrison may, however, amend his complaint no later than September 21, 2020 in an attempt to correct the deficiencies in his claims for tortious inference with an

---

[5] Jason Sandel and Jerry Sandel submitted affidavits describing their limited contacts with Texas. Dkt. No. 33. The Court notes that Jerry represented that he does not "regularly make or participate in business calls made to the state of Texas." *Id.* at 9. By contrast, Jason does not make this representation. *See generally, id.* at 5–6.

existing contract and business disparagement.  Lastly, the Court orders that the parties provide further briefing on Jason Sandel's motion to dismiss for lack of personal jurisdiction.  Harrison's brief is due by September 21, 2020, and Sandel's response is due by September 28, 2020.

The Clerk of Court is directed to terminate Harrison's improperly filed amendment (Dkt. No. 36) and to docket the TAC, attached as an exhibit to Harrison's motion to amend, as a new entry (Dkt. No. 35-1).

So ordered on September 14, 2020.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE