UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

STACEY HARRISON, et al.,

    Plaintiffs,

v.   No. 1:20-CV-038-H

AZTEC WELL SERVICING CO., INC., et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANTS' MOTION FOR LEAVE TO AMEND THEIR ANSWER**

The defendants in this case move for leave to amend their answer. Doing so is unnecessary, they argue. Nevertheless, they say the Court should permit the amendment because it is in the interest of justice to do so, and because the plaintiffs will suffer no prejudice from the amendment.

But the defendants misunderstand the standard governing motions such as theirs, as the plaintiffs note. A showing that there is good cause—not simply that it would be in the interest of justice—to allow the amendment is necessary. And it is difficult to find good cause when, as the defendants argue, the amendment is unnecessary to preserve the defenses contained therein. Such an amendment can only harm the plaintiffs and prolong this case. With no explanation for their delay, the defendants have failed to demonstrate the good cause that Rule 16 demands. Leave to amend is therefore denied.

1.  **Background**

The central allegation in this case is that the defendants defamed the plaintiffs, causing substantial economic harm to plaintiffs' business. The Court entered a scheduling order (Dkt. No. 43) and later extended the deadline for amendment of pleadings to

January 16, 2021 (Dkt. No. 64).  Thanks to a confluence of circumstances, the plaintiffs' Fourth Amended Complaint is now operative.  That complaint was filed on January 15, 2021.  Dkt. No. 77.  The defendants filed answers on February 4.  Dkt. Nos. 84, 85.

The defendants moved on September 13 for leave to amend their answer to include three affirmative defenses—reliance on the advice of counsel, apparent authority, and libel-proof-ness.  Dkt. Nos. 192 (motion); 193 (brief); 194 (appendix).  The defendants' brief argues that, under Rule 15, the Court can only deny leave to amend upon a "showing of 'undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the amendment.'"  Dkt. No. 193 at 2–3 (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)).  None of those exceptions applies here, they say, because, among other things, they do not believe that the affirmative defenses need to be pled.  Dkt. No. 193 at 3.  Moreover, the defendants argue there is neither prejudice nor unfair surprise to the plaintiffs from the proposed amendment because "[t]hese are all matters which have been addressed multiple times throughout discovery."  *Id.* at 4.

A response in opposition from the plaintiffs was filed on October 4.  Dkt. No. 204.  In it, the plaintiffs argue that Rule 16's good-cause standard—not the laxer Rule 15 standard cited by the defendants—governs because the defendants seek to modify a deadline set forth in the Court's scheduling order.  *Id.* at 6–7.  They argue that the defendants fail to show good cause to explain the delayed amendment, that the amendment is unimportant, that the amendment will prejudice them, and that no delay can cure that prejudice.  Dkt. No. 204 at 7–11.

No reply has been filed, but the motion is ripe regardless.  *See* Local Civil Rule 7.1(f).

**2.     Governing Law**

"Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired." *S&W Enters., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533 (5th Cir. 2003); *but see* Dkt. No. 193 at 2–3 (arguing that the Rule 15 standard governs the Court's consideration of the defendants' motion). That rule provides that once a scheduling order has been entered, it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also* Dkt. No. 43 at 10 (ordering that modification of the scheduling order requires a showing of good cause). "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S&W Enters.*, 315 F.3d at 536. The party seeking leave to amend must show that the deadlines could not have reasonably been met despite the diligence of the party seeking the extension. *Id*. at 535 (citing 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1522.1 (2d ed. 1990)). District courts have broad discretion to preserve the integrity and purpose of the pretrial order—the efficient disposition of cases, *see* Federal Rule of Civil Procedure 1. *S&W Enters.*, 315 F.3d at 535.

The four *Geiserman* factors guide the good-cause inquiry under Rule 16(b): (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *S&W Enters.*, 315 F.3d at 536 (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir.1990)). The Court considers the four factors holistically and "does not mechanically count the number of factors that favor each side."

*EEOC v. Service Temps, Inc.*, No. 3:08-CV-1552-D, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012).

**3.   Discussion**

The defendants have not met their burden to show good cause to permit their late amendment because not a single *Geiserman* factor weighs in their favor.

**A.   Why should the Court grant leave?**

The first *Geiserman* factor turns on the quality of the movant's explanation for the late amendment. *S&W Enters.*, 315 F.3d at 536. And here, the defendants' explanation as to their failure to timely move for leave to amend is wanting.

Courts have found sufficient explanations in cases involving developments in applicable law and when new facts became known through depositions and document production. *See Robles v. Archer W. Contractors, LLC*, No. 3:14-CV-1306-M, 2015 WL 4979020, at *3 (N.D. Tex. Aug. 19, 2015) (Lynn, J.); *Settlement Cap. Corp. v. Pagan*, 649 F. Supp. 2d 545, 566–67 (N.D. Tex. 2009) (O'Connor, J.). Courts have found explanations to be insufficient when based on mere inadvertence, a misunderstanding of a court order or rule, or a misunderstanding of the law. *See STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp. 2d 845, 850 (E.D. Tex. 2004) ("[A] party's failure to meet a deadline due to mere inadvertence is tantamount to no explanation at all.") (internal quotation marks omitted); *Geiserman*, 893 F.2d at 791–92 (holding that a district court's decision to strike a late expert designation and preclude expert testimony was not an abuse of discretion where, inter alia, counsel misunderstood the pretrial order and application of a local rule); *Sun River Energy, Inc. v. McMillan*, No. 3:13-CV-2456-D, 2014 WL 4771852, at *4 (N.D. Tex. Sept. 25, 2014)

(Fitzwater, J.) ("[M]isunderstanding of the law, however, constitutes mere inadvertence, which is tantamount to no explanation at all.") (internal quotation marks omitted).

"Where courts decline to grant leave to amend due to a lack of diligence, it is usually because the party retained the records related to the desired amendment." *Howard v. Medicredit, Inc.*, 3:17-CV-3224-D, 2018 WL 3752366, at *3 (N.D. Tex. Aug. 8, 2018) (Fitzwater, J.) (emphasis omitted); *see, e.g.*, *Lopez v. Reliable Clean-Up & Support Servs., LLC*, No. 3:16-CV-2595-D, 2018 WL 3609271, at *4 (N.D. Tex. July 27, 2018) (Fitzwater, J.) (holding that good cause was absent only because the party had possessed documents relevant to amendments for at least 18 months before moving for leave); *Shofner v. Shoukfeh*, No. 5:15-CV-152-C, 2017 WL 3841641, at *2 (N.D. Tex. Apr. 7, 2017) (Cummings, J.) (declining to grant leave to amend where plaintiff "had access to all . . . [relevant] medical records early in the case, yet waited more than a year after filing suit to first hire expert witnesses to review the records").

Here, in explaining why the plaintiffs will not be prejudiced by any amendment, the defendants explain that the defenses they seek to include have been repeatedly discussed at depositions and in other briefing. Dkt. No. 193 at 3–4. That—as plaintiffs point out, Dkt. No. 204 at 7–8—merely begs the question as to why it took until two months before trial for the defendants to file their leave to amend.[*]

The defendants offer no explanation as to why they could not plead—or at least move sooner for leave to amend—the defense of apparent authority. The deposition of Jason Sandel that forms the basis of the defendants' apparent-authority defense took place

---

[*] Trial has since been moved, but at the time of their motion (September 13), trial was set for November 8. Dkt. Nos. 192; 104.

on January 7, 2021, within the deadline for the amendment of pleadings and some eight months before the defendants' motion. Dkt. No. 193 at 3 n.1 (citing Dkt. No. 194 at 40); Dkt. No. 194 at 4 (noting the date of Sandel's deposition as January 7, 2021); Dkt. No. 64 (extending the deadline for amendment of pleadings to January 16, 2021); Dkt. No. 192 (motion for leave to amend filed on September 13, 2021). Of course, Sandel is a defendant in this action, so he—and his codefendants—had ample opportunity to discover what he knew long before his January 7 deposition.

So, too, with the defense of reliance upon the advice of counsel. Again, the defendants cite the Sandel deposition as the catalyst for the argument that they were simply relying on their counsel's advice when they placed the allegedly defamatory advertisements. Dkt. No. 193 at 3 n.2 (citing Dkt. No. 194 at 49). Yet, again, there is no explanation for the eight-month delay between the disclosure of the facts that might support an advice-of-counsel defense and the motion seeking leave to include that in the defendant's answer.

The sole defense for which the defendants have a plausible explanation for their delay is that of the plaintiff being libel-proof. The defendants state that only by deposing others in the energy industry did they learn of the plaintiff's reputation. Dkt. No. 193 at 3. But that does not explain the month-long delay between the close of discovery and the defendants' motion. *Compare* Dkt. No. 193 at 3 n.3 (citing, *e.g.*, Dkt. No. 194 at 118 (deposition of Josh Stewart, dated August 9, 2021)) *with* Dkt. No. 104 (setting discovery deadline of August 9). And while a one-month delay is less worrisome than the eight-month delay mentioned above, the Court does note that, on September 7, the plaintiffs filed their brief in opposition to the defendants' motion for summary judgment. Dkt. No. 185. Page 24 of that brief raises the argument that the defendants have failed to plead the

affirmative defense that the plaintiff is libel-proof. *Id.* at 24–25. Six days later, the defendants filed their motion to amend. Dkt. No. 192.

Moreover, the Court notes that the defendants acknowledged that they had not included a libel-proof defense in their live pleading as early as August 16. *E.g.*, Dkt. No. 156 at 9 n.35 ("AWS and Triple S's live pleading does not include the defense that Plaintiff is libel proof. To the extent that an affirmative pleading is necessary to establish this defense, AWS and Triple S give notice that they intend to move for leave to amend their pleading for good cause shown."). No explanation is offered for why the defendants allowed a month to pass between their acknowledgement and their motion.

Regardless of what inspired the defendants to file their motion when they did, they have not adequately explained either the seven-month delay between their answer and their motion for leave to amend or the one-month delay between the close of discovery and their motion. It was their burden to do so—a burden they have not carried. The defendants possessed all of the information necessary to move for leave to amend well before they did. *See EEOC v. Service Temps Inc.*, 679 F.3d 323, 334 (5th Cir. 2012) (noting that the defendants' knowledge of the relevant facts "accents [their] inability to explain the delay"). The first factor therefore weighs against them. And even if this factor were neutral or weighed in the defendants' favor with regard to the libel-proof defense, the remaining factors weigh against them.

B.   Is the proposed amendment important?

The second factor asks whether the amendment is important to the broader litigation. *S&W Enters.*, 315 F.3d at 536. Courts deem amendments to be important where they potentially provide additional grounds for a party to avoid liability or directly affect a party's

prospects of ultimate success. *Feldman v. Stryker Corp.*, No. 3:18-CV-1416-S, 2020 WL 2507684, at *2 (N.D. Tex. May 15, 2020) (Scholer, J.) (citing *Kouzbari v. Health Acquisition Co.*, No. 3:18-CV-0126-D, 2018 WL 6514766, at*3 (N.D. Tex. Dec. 11, 2018) (Fitzwater, J.)); *see also Maynard v. PayPal, Inc.*, No. 3:18-CV-0259-D, 2018 WL 5776268, at *4 (N.D. Tex. Nov. 2, 2018) (Fitzwater, J.).

Generally, then, the Court would conclude that amendments to include affirmative defenses are important. But the defendants here—the party seeking leave to amend—concede that the proposed amendment is not necessary: "Defendants do not believe these are affirmative defenses that must be pled." Dkt. No. 193 at 3. Instead, "Defendants move this Court for leave to allow Defendants to file their Amended Answer and include these defenses" because "Plaintiff has addressed that [the defenses] are not in the pleadings." *Id.* at 4.

The plaintiffs argue that the defenses must be pled, and they fault the defendants for not carrying their burden as to why the proposed amendments are important. Dkt. No. 204 at 3–6, 9. But whether the defenses must be pled is irrelevant for the Court's present task. If the defendants are right and the defenses are available despite their not being pled, the defendants suffer no harm from denying leave to amend. If, however, the plaintiffs are correct, the untimeliness of the proposed amendment becomes even more apparent, for then the defendants' delay can be explained only by a misunderstanding of the law—a "mere inadvertence, which is tantamount to no explanation at all." *Sun River Energy*, 2014 WL 4771852, at *4. And an unexplained delay cannot be good cause. *See Fahim v. Marriott Hotel Servs.*, 551 F.3d 344, 345 (5th Cir. 2008) (affirming denial of leave to amend because the moving party "offered no explanation for her untimely request"); *Service Temps*, 679 F.3d

at 334 (affirming denial of leave to amend where movant "fail[ed] to provide a plausible explanation for its delay").

The Court will not convert this factor into a "Heads I win; tails you lose" trap for the nonmoving party. For the amendment to be important, the defendants must be incorrect about their argument as to whether the defenses needed to be pled. Having argued that the defenses need not be pled, they cannot now seek the protection of a tardy amendment. At least as to their motion to amend, the Court will take the defendants at their word and conclude—as they urge—that the proposed amendment is mere surplusage. So this factor, too, weighs against the defendants. And even if the Court were to disregard the defendants' concession that the amendment is unimportant, the Court would still conclude that the other factors weigh against granting leave to amend here.

### C. Will the amendment cause prejudice?

The third factor asks whether allowing the late amendment will prejudice the nonmovant. *S&W Enters.*, 315 F.3d at 536.

The defendants' concession as to the second factor all but precludes weighing the third factor in their favor. If, as the defendants say, the defenses are available regardless of whether leave to amend is granted (Dkt. No. 193 at 3, 4), denying leave is harmless. But if they are not available, granting leave to amend would be highly prejudicial to the plaintiffs—the plaintiffs win these arguments by default if the defendants were required to plead them and failed to do so. Allowing the amendment would foreclose that path to victory. The Court thus concludes that, regardless of whether the defenses needed to be pled, granting leave to amend would be prejudicial to the plaintiffs at this late stage of the litigation.

### D. Would a continuance be an appropriate remedy to any prejudice?

The fourth and final factor asks whether a continuance would cure any prejudice to the nonmovant caused by the late amendment. *S&W Enters.*, 315 F.3d at 536.

In a word, no. This case has dragged on long enough. Trial was originally set for August 2021. Dkt. No. 43. It was then reset for November. Dkt. No. 104. And then again for January 2022. Dkt. 203. Three months from trial, the Court will not allow a perhaps-unnecessary amendment to an answer that could have been filed months ago and that would necessitate continuing trial yet again.

Plaintiffs argue, and the defendants do not seriously contest, that discovery was not conducted on the defenses the amendment seeks to add. Dkt. No. 204 at 9–10 (detailing how, by example, one of the proposed defenses will require additional discovery); Dkt. No. 193 at 4 ("These are all matters which have been addressed multiple times throughout discovery"; "Defendants gave Plaintiff informal notice during the discovery process"; "Plaintiff has been aware of all three of these defenses"). Allowing the amendment would require the Court to reopen discovery, reserve decision on the four pending motions for summary judgment, permit supplements thereto, and then resolve those motions, all while facing a January 18, 2022 trial date. And even though a continuance would cure any evidentiary prejudice, a continuance could not cure the prejudice the plaintiffs would suffer from needing to contest the defenses on their merits. Nor would a continuance be appropriate in light of the Court's prior continuances, particularly given that the moving parties have not offered a valid justification for their delay. *See Fahim*, 551 F.3d at 345 ("The district court acknowledged that it could have continued the trial to alleviate any

prejudice to [the nonmoving party] but declined to do so because [the moving party] offered no explanation for her untimely request.").

Finally, while the fourth factor focuses only on the prejudice to the nonmoving party from the untimely amendment, the Court is mindful of the effect that a continuance would have on other matters pending before the Court. The press of those other matters underscores that a continuance would be inappropriate here. District courts, of course, have discretion to manage their trial dockets as necessary. *See, e.g.*, *Dietz v. Bouldin*, 139 S. Ct. 1885, 1891 (2016) (recognizing "that a district court possesses inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases'") (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). And this Court has a particularly heavy trial docket—13 trials set in January, 12 in February, and 39 in March. The Court has already accommodated these parties by twice resetting their trial date. Doing so yet again to accommodate an untimely amendment would result in unfair delays to other parties seeking the Court's help in achieving a just, speedy, and inexpensive resolution of their cases.

**4.     Conclusion**

District judges have the power "to control their dockets by refusing to give [lawyers] a second chance to develop their case." *Reliance Ins. Co. v. Louisiana Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997). That is what the defendants seek. But none of the four factors the Court must consider weighs in favor of granting the defendants leave to amend their answer. They raise the same defenses they seek to add to their answer in their motions for summary judgment and in their response to the plaintiffs' motion for partial summary

judgment. *E.g.,* Dkt. Nos. 156 at 9 & n.35 (motion for summary judgment brief); 167 at 8 & n.39 (response to plaintiffs' motion for partial summary judgment). If those defenses needed to be pled, they will fail in those motions. If they did not need to be pled, denying leave to amend is harmless. The defendants cannot—eight months after the deadline—amend their answer to correct a potential error their opponents have seized upon. The defendants' motion for leave to amend their answer (Dkt. No. 192) is denied.

    So ordered on November 12, 2021.

                                                              _____
                                                              JAMES WESLEY HENDRIX
                                                              UNITED STATES DISTRICT JUDGE